

**ORDERED in the Southern District of Florida on April 14, 2011.**

_____
Raymond B. Ray, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION
www.flsb.uscourts.gov

Case No.: 10-35913-BKC-RBR
Chapter 7

In re:

KARI BOOKMYER,

               Debtor.
_____/

### MEMORANDUM DECISION AND ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS CHAPTER 7 CASE PURSUANT TO 11 USC §§ 707(B)(1) AND (B)(3) (DE # 38)

THIS MATTER came before the Court on March 21, 2011, upon the evidentiary hearing on the *United States Trustee's Motion to Dismiss Chapter 7 Case Pursuant to 11 U.S.C. §§ 707(b)(1) and (b)(3)* ("Motion") (DE # 38). The Court, having heard the representations and arguments of counsel for both the United States Trustee and for the Debtor,[1] having considered the evidence

---

[1] According to the Court docket and file, counsel for the Debtor, Stuart Golant, withdrew from the instant case on February 1, 2011 (DE # 48). Although Mr. Golant represented the Debtor at the evidentiary hearing, no Notice of

presented at the hearing, and having reviewed the applicable law, hereby grants the relief sought by the Motion, and hereby dismisses the instant bankruptcy case unless the Debtor moves to convert the case to a case under Chapter 13 of the Bankruptcy Code within ten (10) days from the entry of this Order.

The following constitutes the Court's findings of fact and conclusions of law pursuant to and in accordance with Federal Rule of Bankruptcy Procedure 7052. The instant proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## FINDINGS OF FACT

On August 30, 2010, Kari Bookmyer (hereinafter, the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (DE # 1). On the same date, the Debtor filed Schedules A through J, a Statement of Financial Affairs, and a Statement of Current Monthly Income and Means Test Calculation (hereinafter, the "Means Test Form") (DE # 17-18). The Debtor's payment advices from her employer were also filed on September 16, 2010 (DE # 16). On November 2, 2010, the Debtor amended the Means Test Form (DE # 30) and Schedules I and J (hereinafter, the "Amended Schedules") (DE # 32).

According to the Debtor's Schedules, Amended Schedules, Means Test Form, and the testimony and evidence presented at the hearing, the following facts are undisputed:

(A)   The Debtor has no unsecured priority debts.

(B)   The Debtor has $30,460 in general unsecured debts.

---

Appearance has been filed with the Court to date.

(C)     The Debtor has secured debts totaling $480,000, which includes a first mortgage held by M&T Bank, which is secured by real property located at 2185 NE 61 Court, Ft. Lauderdale, FL 33308 (hereinafter, the "Ft. Lauderdale Property"), and a second mortgage held by JP Morgan Chase and secured by the Ft. Lauderdale Property.

(D)     The Debtor claimed a household size of five persons.

(E)     The Debtor claimed a household Combined Average Monthly Income of $9,505. The Debtor claimed household expenses of $14,584.

(F)     The Debtor has been employed in Customer Service with Triumph Instruments, Inc., for eleven (11) years and continues to be employed to date.

(G)     The non-filing spouse has been employed as a firefighter with Palm Beach County for twelve (12) years and continues to be employed to date.

(H)     On October 15, 2010, relief from the stay was granted to M&T Bank with respect to the Ft. Lauderdale Property.

(I)     The Debtor is not current on the mortgage on the Ft. Lauderdale Property. In fact, the Debtor has not made any mortgage payments in more than six (6) months.

(J)     The Debtor took the following monthly deductions that the United States Trustee argues are not reasonable and necessary, and/or are excessive:

  (1)    A 401(k) deduction of $585 for the Debtor;

  (2)    A 401(k) loan repayment deduction of $185 for the Debtor;

  (3)    Mortgage payments totaling $3,501 for payment of the first and second mortgage on the Ft. Lauderdale Property;

  (4)    A deduction of $1,034 for utilities, including $500 for telephone expenses, $287 for electricity, $227 for water and sewer, and $20 for other utilities.

  (5)    A deduction of $205 for home maintenance expenses related to the Ft. Lauderdale Property.

  (6)    A deduction of $2,480 for food expenses.

  (7)    A deduction of $840 for transportation expenses, plus an additional $770 for automobile insurance.

(8)     A deduction of $815 for recreation expenses.

(9)     A deduction of $1,030 for private school.

(10)    A deduction of $210 for school lunches and activities.

(11)    An additional deduction of $215 for cosmetics and hairstyling.

According to the Debtor's Petition, the Debtor's debts are primarily consumer debts. Therefore, the Debtor's bankruptcy case is subject to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 (hereinafter, the "BAPCPA").[2]

**STATEMENT OF APPLICABLE LAW**

**The Totality of Circumstances - 11 U.S.C. § 707(b)(3)**

11 U.S.C. § 707(b)(3) provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions to this chapter in a case in which the presumption in subparagraph (A)(I) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith, or
>
> (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") was intended to address what Congress perceived to be certain abuses of the bankruptcy process. As stated by one court, "[a]mong the abuses identified by Congress was the easy access to chapter 7 liquidation proceedings by consumer debtors who...could afford to pay...their unsecured creditors." In re

---

[2] The BAPCPA is effective for cases filed on or after October 17, 2005.

4

Hardacre, 338 B.R. 718, 720 (Bankr. N.D. Tex 2006). BAPCPA lowered the standard for dismissal under section 707(b) from "substantial abuse" to "abuse." See 146 Cong. Rec. S11683-11729 (section by section explanation of HR 2415), Dec. 7, 2000.[3] The legislative history of the bankruptcy reform legislation proposed in 2000 with regard to substantially the same provision as the current section 707(b), provides:

> [S]ituations in which courts dismiss debtors from Chapter 7 today clearly continue to be grounds for dismissal under HR 2415, including such cases as In re Lamanna, 153 F.3d 1 (1st Cir. 1998).[4] In addition, since the standard is "abuse" rather than "substantial abuse," the courts are clearly given additional discretion to control abusive use of chapter 7 when that is appropriate ....
>
> The "bad faith" and "totality of the circumstances" of the debtors' situation is adopted as the appropriate standard. It is intended that all forms of inappropriate and abusive debtor use of chapter 7 will be covered by this standard, whether because of the debtors' conduct or the debtors' ability to pay. If a debtor's case would be dismissed today for "substantial abuse" as in In re Lamanna, ...it is intended that the case should be subject to dismissal after HR 2415. ... In dealing with ability to pay cases which are abusive, the presumption of abuse and the safe harbor protecting debtors from application of the presumption will not be relevant.

---

[3] Although this legislative history pertains to an earlier version of bankruptcy reform legislation, because the amendment to section 707(b) in the BAPCPA is substantially the same and because there is little legislative history pertaining to the BAPCPA, this section by section discussion may be helpful to the Court.

[4] In In re Lamanna, 153 F.3d 1 (1st Cir. 1998), the First Circuit addressed the meaning of "substantial abuse" under § 707(b) and essentially adopted the United States Trustee's suggestion that ability to repay, alone, may constitute abuse sufficient to warrant dismissal. The First Circuit held: "[W]e do not require a court to look beyond the debtor's ability to repay if that factor alone warrants [dismissal]." However, the First Circuit expressly adopted the test articulated by the Sixth Circuit in In re Krohn, 886 F.2d 123 (6th Cir. 1989), which held that substantial abuse is a flexible standard by which consumer cases may be dismissed upon a showing of either lack of honesty or want of need. In the Lamanna case, the debtor, who lived with his parents, could repay all his debts ($15,000) with future disposable income in three years and so his Chapter 7 case was dismissed.

Prior to enactment of the BAPCPA, there were three major approaches for determining "substantial abuse" under section 707(b): the ability to repay or "per se" rule; the "totality of the circumstances" approach; and the "hybrid" approach. Although the courts used different approaches, the common thread among the circuits was that, if a debtor had the ability to repay even a portion of his debts out of future income, he should not be in Chapter 7. In re Cox, 249 B.R. 29, 31 (Bankr. N.D.Fla. 2000). See also, Matter of Strange, 85 B.R. 662, 664 (Bankr. M.D.Ga. 1988); In re Woodhall, 104 B.R. 544, 545 (Bankr. M.D. Ga 1989). Consequently, a debtor's ability to pay, standing alone, may warrant dismissal under section 707(b)(3). See In re Lamanna, *supra*. Likewise, dismissal under section 707(b)(3) may also be warranted if abuse is demonstrated by other factors, even if no ability to pay is shown. See In re Stewart, 175 F.3d 796, 809 (10th Cir. 1999).

Since the enactment of BAPCPA, Courts in the Southern District of Florida have agreed with those line of cases which follow In re Lamanna. In the case of In re Henebury, the Honorable Chief Judge Paul G. Hyman held that "[t]he debtor's total financial situation as a measure of ability to pay, and bad faith are separate and sufficient grounds for dismissal. Either ability to pay *or* bad conduct in connection with the bankrupt will warrant dismissal for abuse under §707(b)(3)." In re Henebury, 362 B.R. 595, 607 (Bankr. S.D.Fla. 2007) (emphasis added). Following the other post-BAPCPA courts, Judge Hyman noted that § 707(b)(3)(B) "specifically delineates the pertinent inquiry as the 'totality of circumstances' of *the debtor's financial situation*." Id. See also, In re Parada, 391 B.R. 492 (Bankr. S.D. Fla. 2008) (Honorable Judge Laurel M. Isicoff). This Court agrees with the analysis of both Chief Judge Hyman and Judge Isicoff, and with their respective review of the caselaw on this issue as thoroughly explained in the cases cited herein.

In this particular case, the United States Trustee has not alleged bad faith; therefore, the Court will only consider the Debtor's financial situation in determining whether this case demonstrates abuse. "In determining whether a debtor's financial situation demonstrates abuse . . . courts have applied a test that analyzes 'whether the debtor has sufficient projected disposable income to fund a hypothetical chapter 13 case." In re Parada, 391 B.R. at 501 (citing In re Henebury, 361 B.R. at 611).

In determining whether the Debtor's financial situation demonstrates abuse, Schedules I and J are not accepted without question. See, In re Gearhart, 2010 WL 4866179 *2 (Bankr. M.D. Pa., Nov. 23, 2010). A debtor must prove that her expenses are reasonable in light of the debtor's financial circumstances. Id. Although a debtor is not expected to live in poverty, the debtors must be prepared to be reasonable and adjust their discretionary expenses accordingly. Id.

## CONCLUSIONS OF LAW

### Deductions Relating to the Debtor's Voluntary
### 401(k) Contributions and Repayment of 401(k) Loans

The United States Trustee argues that the Debtor's Combined Average Monthly Income improperly includes deductions for the Debtor's voluntary 401(k) contributions and the Debtor's 401(k) loan repayment, as not reasonably necessary for the support and maintenance of the Debtor. Bankruptcy Courts in the Southern District of Florida have consistently held that a debtor should not be permitted to pay themselves money at the expense of his creditors. See, In re Parada (holding that it is inappropriate to deduct 401(k) contributions in computing disposable income). In In re Leung, this Court held that a debtor's payment or contributions into any type of account for the present or future benefit of the debtor is not reasonably necessary for the maintenance or support of the debtor

7

or a dependent. In re Leung, 311 B.R. 626, 631 (Bankr. S.D. Fla. 2004) (holding that the debtor's deductions for 401(k) contributions were inappropriate). See, In re Carpintero, Case No. 09-28366-BKC-AJC (Bankr. S.D. Fla., Cristol, J., July 15, 2010) (*unpublished opinion*) (it is unfair to allow a debtor to save money for retirement without repaying unsecured creditors). See also, In re Dorwarth, 258 B.R. 293 (Bankr. S.D. Fla. 2001); In re Cox, 249 B.R. 29 (Bankr. M.D. Fla. 2000); Anes v. Dehart (In re Anes), 195 F.3d 177 (3d Cir. 1999) (repayment of 401(k) loans are not reasonably necessary).

The Court finds that the Debtor's deductions for the voluntary 401(k) contributions and for the repayment of her 401(k) loans are not reasonably necessary for the support and maintenance of the Debtor. Therefore, such deductions are not appropriate in computing the Debtor's disposable income.

### Deductions Relating to the Ft. Lauderdale Property

The United States Trustee also argues that the Debtor is improperly including on Schedule J $3,501 for the payment of the Debtor's first and second mortgage and $205 for home maintenance expenses related to the Ft. Lauderdale Property. The United States Trustee's position is also well supported by the caselaw in the Southern District of Florida. When determining a debtor's projected disposable income for purposes of Schedules I and J, a debtor must exclude deductions on payments that the debtor will not be making going forward and that therefore, will not negatively impact a debtor's disposable income. See, In re Parada, 391 B.R. at 502. See also, In re Henebury, 361 B.R. at 610.

The Debtor argues that she is still living on the property and that she intends to continue living therein. However, the evidence clearly shows that the Debtor has not made any mortgage

payments for more than six (6) months and that she cannot afford the mortgage payments unless M&T Bank agrees to modify the mortgage. To date, the Debtor has not provided any evidence to show that M&T Bank has agreed to such a modification. Furthermore, these expenses are not even a true reflection of the Debtor's expenses, as the Debtor has not been making any payments to M&T Bank or JP Morgan Chase and it is clear that the Debtor does not have funds to become current on her mortgage payments today. Although the Debtor will technically be entitled to a $0 deduction for housing expenses, as she is not making any payments toward her mortgage or towards rent, the United States Trustee has allowed $1,503, which is the IRS Standard amount for a family of five (5) in Broward County, and as such, the Court will allow this deduction as well.

Having made no payments with respect to the Ft. Lauderdale Property for more than six (6) months and the bank having obtained relief from the stay without any objections raised by the Debtor, the Debtor may have already effectively surrendered the Ft. Lauderdale Property. Therefore, the Debtor is not allowed to deduct the $3,501 and the $205 with respect to the Ft. Lauderdale Property, but rather, should be allowed to deduct $1,503.

## Household Expenses

The United States Trustee further argues that the Debtor's household expenses are excessive and/or improper. For the reasons stated below, this Court agrees.

The Debtor contends that the following expenses concerning food, clothing, household, and other items, are reasonable:

(A)   $1,034 in utilities, including: $500 for telephone, $287 for electricity, $227 for water and sewer, and $20 for other utilities;

(B)   $2,480 in food expenses;

    (C)    $315 in clothing;

    (D)    $110 in laundry and dry cleaning;

    (E)    $25 in cosmetics and personal hygiene;

    (F)    $190 in hairstyling; and

    (G)    $35 in pet expenses.

The United States Trustee argues that the IRS Standard amount of $1,633 for food, clothing, household, and other items, is reasonable in this particular case. The Debtor's household expenses for food, clothing, household, and other items listed herein total $4,189, well above the IRS Standards. Other than showing that she incurs these expenses every month, the Debtor has not provided any evidence to contradict the United States Trustee's arguments and to justify that her expenses are reasonable. Therefore, the Court agrees with the United States Trustee that the expenses herein should total $1,633 and that the Debtor's current expenses are excessive and unreasonable.

The Debtor also contends that a deduction of $840 for transportation and $770 for automobile insurance is reasonable. The United States Trustee argues that $1,610 in transportation expenses is unreasonable and the Court agrees. The Debtor testified that her family spends $840 for transportation, including the automobile insurance, making the $770 included as auto insurance expense duplicative. Therefore, the Court agrees with the United States Trustee that the additional $770 should not be included on Schedule J.

The Debtor listed $815 as a deduction for recreation expenses and argues that such expenses are reasonable. The $815 consists of the Debtor's two daughters' gymnastics and extra curricular activities. Although the Court is sympathetic to the Debtor's desire to have her daughters continue

their gymnastics and other extra curricular activities, these expenses cannot be justified in bankruptcy, as they are discretionary. It is also unfair for the Debtor to continue with her lifestyle at the detriment of her unsecured creditors. The United States Trustee contends that $400 in recreation expenses is reasonable in this particular case and the Debtor has not provided any evidence to contradict the United States Trustee's evidence and to justify her contention that these expenses are reasonable. Therefore, the Court agrees with the United States Trustee that the $815 in recreation expenses are unreasonable and excessive and anything above $400 should not be allowed on Schedule J.

Finally, the Debtor contends that $1,030 for private school and $210 for school lunches and school activities, is reasonable. The United States Trustee contends that these expenses are unreasonable and excessive. The Court agrees with the United States Trustee with respect to the $210 for school lunches and school activities, as the Debtor has not contradicted the United States Trustee's evidence that the $210 deduction is unreasonable and the Debtor has not provided any evidence to justify her contention that the expense is reasonable.

With respect to the $1,030 for private school tuition, private school tuition is not generally a reasonably necessary expense. See, In re Watson, 309 B.R. 652, 660 (BAP 1st Cir. 2004). If a debtor demonstrates that the local public schools was not an adequate alternative, the Court may consider these expenses reasonable within the particular circumstances of the case. See, generally, Id. The Debtor testified that the local schools were not an adequate alternative for her two daughters. However, the Court does not need to determine whether the tuition expenses in this particular case are reasonable, as taking into consideration the excessive expenses listed above, the Debtor will already have sufficient disposable income to pay her unsecured creditors in full.

**The Debtors' Financial Situation**

**Income**

After eliminating the Debtor's voluntary 401(k) contribution and the 401(k) loan repayment, and after making minor adjustments to the true income for the Debtor as reflected by her pay advices, the Debtor's Combined Average Monthly Income is $10,275.

**Expenses**

After the excessive amounts mentioned above have been taken into consideration, except for the private school tuition expense, and after the amounts associated with the Ft. Lauderdale Property are eliminated, and adjusting Schedule J expenses, the Debtor's total monthly expenses are $8,983. After subtracting the expenses from the Debtor's Combined Average Monthly Income of $10,275, this Court finds that the Debtor has disposable income in the amount of $1,292 per month, enough to pay her unsecured creditors in full within sixty (60) months.

**CONCLUSION**

For the reasons stated above, the Court finds that the granting of relief to this Debtor would constitute a substantial abuse of the bankruptcy process as set forth in 11 U.S.C. § 707(b)(3), and that the Debtor is not entitled to Chapter 7 relief.

Accordingly, the Court

**ORDERS** that the Motion is **GRANTED**. This case shall be **DISMISSED WITH PREJUDICE OF 180 DAYS**, within ten days of the entry of this Order, unless Debtor converts this case to a case under Chapter 13.

# # #